IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


JOHN PATRICK CULLEN                                                    PLAINTIFF

       v.                         Civil No. 6:11-cv-06042

GARLAND COUNTY, ARKANSAS;
SHERIFF LARRY SANDERS;
CHIEF DEPUTY RAY SHOPTAW;
CAPTAIN MEL STEED; and
LT. RONNIE RADLEY                                                      DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

     This is a civil rights action filed by the Plaintiff, John Patrick Cullen, pursuant to 42 U.S.C.

§ 1983.  The Plaintiff is not currently incarcerated but was incarcerated at the Garland County

Detention Center (GCDC) when this action was filed.  He proceeds *pro se* and *in forma pauperis.*

While he was incarcerated at the GCDC,  Plaintiff contends his constitutional rights were violated

in a number of ways.  Defendants have filed a motion for summary judgment (Doc. 16).  Plaintiff

has responded to the motion (Docs. 28 & 35).  The motion is now ready for decision.

### 1.  Background

     Plaintiff maintains he was subjected to the following unconstitutional confinement during

the time he was at the GCDC: toilets that did not flush; water leaks constantly from the sinks and

toilets; no tuberculosis lights; inadequate staffing resulting in the guard stations not being manned;

food portions being too small; locking devises on cell doors not working so padlocks were used; and

being locked down for twenty-three hours a day.  He also maintains the grievance procedure was

inadequate because he did not receive responses all the time.  Finally, he maintains Defendants refused to make him copies of his legal work.

### 2.  Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view all evidence and inferences in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3.  Discussion

Defendants have moved for summary judgment on all claims.  First, they argue that, even assuming a constitutional violation occurred, Plaintiff cannot show that a policy or custom of Garland County was the moving force behind any of the alleged constitutional violations.  Second, they maintain that the Plaintiff's unconstitutional conditions of confinement claims are barred because the Plaintiff can show nothing other than *de minimis* injuries.  Third, Defendants assert that a grievance procedure does not confer any substantive right on inmates.  Further, they note many of the grievances attached to the complaint contain timely responses.  Fourth, they maintain Plaintiff's claim regarding denial of copies of legal work fails because he suffered no actual injury.

### A.  Unconstitutional Conditions of Confinement

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial

detainees or convicted inmates, that  prison officials failed to provide adequate food, clothing, shelter, etc.).

In conditions of confinement cases, an Eighth Amendment violation is shown by proof of a serious

deprivation of "the minimal civilized measure of life's necessities" and "offending conduct [that is] wanton."

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective

element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298,

(1991)).   "The defendant's conduct must objectively rise to the level of a constitutional violation by

depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must

also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner."

*Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).

In discussing the subjective state of mind required on the part of a detention center official, the Court

of Appeals for the Eighth Circuit has stated:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate
> humane conditions of confinement unless the official knows of and disregards an excessive
> risk to inmate health or safety; the official must both be aware of facts from which the
> inference could be drawn that a substantial risk of serious harm exists, and he must also
> draw the inference.

*Randle v. Parker*, 48 F.3d 301, 304 (8th Cir. 1995)(*quoting Farmer*, 511 U.S. at 837)(internal quotation

marks omitted).

**(1).  In operable toilet**

Under the totality of the circumstances, I believe that certain of Plaintiff's allegations rise to

the level of constitutional significance.  First, Plaintiff maintains he was confined to a cell in which

the toilet did not flush.  In the evening, guards came in and flushed the inoperable toilet with five

gallon buckets of water.  He indicated the guards were fairly consistent with flushing about manually

toilets every evening;  but there were times it was 36 to 48 hours between flushes.  *Defendants'*

*Exhibit* (hereinafter *Defts' Ex.*). A at pg. 1.  Moreover, Plaintiff indicates the sinks and the toilets leaked.  *Id.* at pg. 2.  This left water on the floor of the cell.

According to Plaintiff, while he did not fall, he did slip on "many occasions."  *Id.* at pg. 2. He believed he had slipped approximately six times in a six month period."  *Plaintiff's Response* (hereinafter *Plff's Resp.*) at ¶ 4(a).  The toilets had to be flushed like this for "every evening for months on end."  *Id.* at ¶ 7.  Plaintiff indicated that feces and urine would remain in the toilet bowl for hours--sometimes days.  *Id.*

Plaintiff also indicated the were "forced to eat our meals [and] live in a 10' x 8'[1] (approx.) cell with human excrement in [the] toilet [and] no running water."  *Id.* at ¶ 7.  Plaintiff was not physically injured when the deputies would occasionally forget to flush the toilets.  *Plff's Resp.* at ¶ 8.

Lieutenant Ronnie Radley, the assistant jail administrator, by affidavit states that the "plumbing system at the detention center is old and out-dated and [they] have had numerous issues." *Defts' Ex.* B at ¶ 4.  However, he states they "managed the situation the best we can and have plumbing repaired."  *Id.*  He does not dispute that this situation went on for months, or that Plaintiff ate meals in his cells, or indicate Plaintiff had access to an operable toilet.  Defendants are not entitled to summary judgment on this claim. I find genuine issues of fact as to whether Defendants were deliberately indifferent to the risk of harm to Plaintiff posed by the inoperable leaking toilet.

**(2).  Lack of Tuberculosis (TB) Lights**

Plaintiff argues the absence of TB lights put him at considerable risk to be infected with TB. *Defts' Ex.* A at pg. 2.  Plaintiff did not contract TB and was not physically injured in anyway.  *Plff's Resp.* at ¶ 11.  He knew of no one who had TB.  *Id.* at ¶ 12.  This claim does not state a claim of

---

[1] The Detention Facility Compliance Reports indicate the cells are 11' x 7' and the square footage is 77.  *Defts' Ex.* C at pg. 1.

denial of minimal civilized measure of life's necessities.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Defendants are entitled to summary judgment on this claim.

**(3).  Unmanned Guard Stations**

Plaintiff alleges that the guard stations were not manned during grave yard shifts and were rarely manned on swing shifts.  Radley states they are "not required by jail standards to have manned guard stations during grave yard shift.  However, cell checks are conducted every . . . sixty minutes during this time period."  *Defts' Ex.* B at ¶ 5.  Plaintiff maintains guards are required to have an intercom system between inmates and deputies at all times.  *Plff's Resp.* at ¶ 14.   Further, he maintains that because of the lack of guards there would be no one to respond to a medical emergency or an act of violence.   *Id.* at ¶ 15.

Defendants do not address the issue of a method of communication between the guards and the inmates.  Both parties rely on the Arkansas State Jail Standards.  "Jail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 2006).[2]  I believe that there is a genuine issue of fact as to whether the Defendants were deliberately indifferent to the risk of harm to the Plaintiff when the lack of staffing is considered along with a lack of a means of communication between inmates and guards.

**(4).  Inadequate Diet**

The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health.  *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir.

---

[2]Plaintiff's supplemental response (Doc. 35) largely contains references to jail standards.

1980)(prisoners are guaranteed a reasonably adequate diet).   To prevail on an Eighth Amendment claim, Watkins must show the Defendants were deliberately indifferent to his dietary needs. *Wishon v. Gammon*, 978 F.2d 446 (8th Cir. 1992).

In this case, Plaintiff alleges the food portions were inadequate.   He said breakfast consisted of two "slots" or spoons of oatmeal, one biscuit, and one cup of powered milk; lunch consisted of one bologna sandwich, two "slots" of noodles and two cookies; dinner was the same as lunch. *Defts' Ex.* A at pg. 3; *Plff's Resp.* at ¶¶ 23-26.   During his incarceration, Plaintiff states he lost fifteen to twenty pounds. *Defts' Ex.* A at pg. 3.   Plaintiff's health did not suffer as a result of the weight loss. *Id.* at ¶ 27.   Unfortunately, no one has provided the Court with Plaintiff's dates of incarceration.   The length of his incarceration would be valuable in conjunction with the amount of weight Plaintiff lost.

With respect to the diet, Radley asserts that the "menu is prepared by a dietician and inmates are receiving appropriate food portions." *Defts' Ex.* B at ¶ 6.   He does not provide the Court with a copy of the menu as approved by the dietician; explain how portion control was handled; indicate how many calories the meals provided; or indicate whether the diet, which appears to lack any fruit or vegetables, was supposed to be supplemented with multi-vitamins or a vitamin C supplement. Defendants do not address Plaintiff's weight loss which may in and of itself be indicative of an inadequate diet.   I believe there are genuine issues of material fact regarding the adequacy of the diet that preclude summary judgment in Defendants' favor.

**(5).  Safety--Use of Padlocks on Cell Doors**

Plaintiff maintains Defendants have created dangerous conditions by using padlocks on the cell doors instead of electronic locks. *Plff's Resp.* at ¶ 17.   Plaintiff believes that in the event of an

emergency, such as a fire, it would take the guards too long to manually unlock each cell.  *Id.* at ¶ 18.

Radley admits the electronic locks were not working.  *Defts' Ex.* B at ¶ 7.  However, he states:

> we had emergency plans in place in case of a fire or other event requiring the evacuation of inmates.  Each officer at the detention center had a key to the padlocks and we had bolt cutters available in case of emergencies.  Likewise, we had aspirators at the detention center so that officers could enter cell blocks even during heavy smoke to release inmates from their cells.

*Defts' Ex.* B at ¶ 7.

Plaintiff was not injured as a result of the use of padlocks.  *Plff's Resp.* at ¶ 22.  There was appears to have been no emergency while Plaintiff was detained at the GCDC.  There is no genuine issue of fact as to whether Plaintiff the use of padlocks violated the Plaintiff's Eighth Amendment rights.

### (6).  Extended Periods of Lock Down

Plaintiff maintains he was locked down for extended periods of time due to staff shortage.  *Plff's Resp.* at ¶ 31.  In particular, he maintains he was locked down for up to seventy-nine hours due to staff shortage.  *Id.*  According to Plaintiff, the only shift that allows inmates out  of their cells is the swing shift-- typically for three hours out of twenty-four.  *Id.* at ¶ 32.  If swing shift does not allow the inmates out for three days in a row, then that is seventy-two hours of solid look-down.  *Id.*  If they were not allowed out, Plaintiff states they could not take showers or eat outside the cell which had feces and urine in the toilet.  *Id.* at ¶ 34.  Plaintiff states there was no running water in the cells and the toilets were inoperable.  *Id.* at ¶ 35.

According to Radley:

> It is true that there were times when inmates had to be locked down during an entire eight (8) hour shift if we did not have enough staff on hand to ensure security. However, inmates would never have been locked down for such a long period of time as alleged by Mr. Cullen.

*Defts' Ex.* B at ¶ 8.

No party has referred the Court to any jail records.  Plaintiff maintains Radley's answer is evasive because he does not advise the Court that the only shift that allows inmates out is swing shift.  The Court is not free to adopt one party's version of the events over the other party's.  On the current record, the Court cannot say Defendants are entitled to summary judgment on this claim.

### 7.  The Nature of the Injury

Defendants maintain Plaintiff suffered, with the exception of having lost fifteen to twenty pounds on his inadequate diet claim, only *de minimus* injury which precludes his claims as to the alleged unconstitutional conditions of confinement.  In light of the Supreme Court's decision in *Wilkins v. Gaddy*, 559 U.S. 34 (1992)(Eighth Amendment excessive force claim--holding that the core judicial inquiry is not on the quantum of injury suffered but on whether the force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm), the Court believes the proper focus is on the objective and subjective components of the Eighth Amendment, set forth above, rather than on the extent of injury.

However, the lack of physical injury may under the Prison Litigation Reform Act (PLRA) preclude an award of compensatory damages to the Plaintiff.  Section 42 U.S.C. § 1997e(e) of the PLRA provides as follows:  "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

This provision limits the available damages in the absence of a physical injury but does not preclude a Plaintiff from pursuing a claim. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(The physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and punitive damages); *see also Pool v. Sebastian County*, 418 F.3d 934, 942 n.2 (8th Cir. 2005)(Section 1997e(e) presents an issue of damages under the PLRA).

### B.  Inadequate Grievance Procedure

"Inmates do not have a constitutionally protected right to a grievance procedure.  Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . .  grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted); *see also Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)(denial of grievances does not state a substantive constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available."  Id. (citation

omitted).  "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."  *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures.  He makes no argument that he was treated differently from other similarly situated prisoners, or  his grievances were ignored because of his exercise of his constitutional rights, or his ability to exercise any specific constitutional right was chilled by Defendants' actions.  Defendants are entitled to judgment in their favor on this claim.

### C.  Failure to Make Copies

Plaintiff has no constitutional right to free photocopies of legal documents.  *See e.g, Collins v. Goord*, 438 F. Supp. 2d 399, 416 (S.D.N.Y. 2006).  Instead, Plaintiff has a constitutional right of access to the Courts.  Plaintiff admits he did not miss any deadlines for filing pleadings in his pending cases and that his cases were not adversely effected by Defendants not providing him copies of documents.  *Plff's Resp.* (Doc. 28) at ¶ 30.

### D.  Official Capacity Claims

Defendants maintain the official capacity claims should be dismissed.  They contend there is no custom or policy that was the moving force behind the alleged constitutional violations.  Plaintiff maintains that the Defendants are violating multiple jail standards which provide the applicable policy.  Plaintiff maintains the Defendants are "breaking policy knowingly, daily." *Plff's Resp.* at ¶ 36.

An official capacity claim"is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  In

-10-

other words, the official capacity claims are treated as claims against Garland County.   *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Garland County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).  The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. Speer v. City of Wynne, 276 F.3d 980 (8th Cir.2002); Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. Szabla v. City of Brooklyn Park, 486 F.3d 385, 389-90 (8th Cir.2007).

*Id.* at 817-18.

"To establish the existence of a policy, [Plaintiff] must point to a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009).   He "must also show that the policy was unconstitutional and that it was the moving force behind the harm that he suffered." *Id.* (internal quotation marks and citation omitted).  Plaintiff has made no such showing.  Therefore, there is no basis on which Defendants can be held liable on the official capacity claims.

**4.  Conclusion**

For the reasons stated, I believe the summary judgment motion (Doc. 16) should be granted in part and denied in part.  Specifically, it should be granted with respect to the following claims: (1) the lack of TB lights; (2) the use of padlocks; (3) inadequacies in the grievance procedure; (4) failure to make copies; and (5) all official capacity claims.

Plaintiff has attached, with a supplemental complaint, a grievance in which the response states: "I believe if you keep up writing grievances the jail will definitely be locked down 23 hrs a day."  ECF No. 11 at pg. 7.  This might be sufficient under the liberal standard applied to *pro se* documents to assert a claim of retaliation.  However, the signature is illegible and the Court cannot tell if this remark was made by one of the named Defendants.  If Plaintiff believes he has a retaliation claim, he should be directed to file an amended complaint identifying the individual involved and stating how he believes his constitutional rights have been violated.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of February 2013.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-12-